UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LAPETE HICKS, SR., ) | Civ. 11-4096-KES |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER GRANTING |
| ) | DEFENDANTS' MOTION FOR |
| CORRECT CARE SOLUTIONS, and ) | SUMMARY JUDGMENT |
| MINNEHAHA COUNTY JAIL, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, LaPete Hicks, Sr., filed a pro se civil rights lawsuit against defendants, Correct Care Solutions and the Minnehaha County Jail. Hicks is currently incarcerated at the South Dakota State Penitentiary in Sioux Falls, South Dakota, but at the time relevant to this action he was housed in the Minnehaha County Jail in Sioux Falls, South Dakota. Hicks alleges that defendants were deliberately indifferent to his serious medical needs when they stopped providing him with free snacks, which Hicks claims he needed to treat his hypoglycemia. Defendants move for summary judgment. Hicks opposes defendants' motion.

## FACTS

Because Hicks failed to submit a statement of material facts,[1] the material facts set forth in defendants' statement of material facts are deemed

---

[1] After defendants filed their motion for summary judgment, Hicks moved to extend his deadline to respond to the summary judgment motion. The court granted the motion and extended the deadline to respond by two months. When Hicks did respond, he did not dispute any of defendants' statement of material facts.

admitted. *See* D.S.D. LR 56.1(D) ("All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts."). Thus, in the light most favorable to Hicks, the nonmoving party, the facts are as follows:

Defendant Correct Care Health Solutions (Correct Care) is the private entity that provides healthcare services at the Minnehaha County Jail under a contract with the county. Hicks claims that he was denied medical care and treatment for his hypoglycemia while detained at the Minnehaha County Jail. Dr. Jean Hesler is a licensed physician who works with Correct Care Solutions to provide medical care to inmates at the Minnehaha County Jail. Dr. Hesler was directly involved in Hicks's medical care and treatment during his detention at the jail. Dr. Hesler provided an affidavit relating to Hicks's medical treatment at the Minnehaha County Jail.

The Minnehaha County jail provides free snacks on a regular basis to inmates diagnosed with diabetes in order to help them maintain regular blood sugar levels. Free snacks are also provided to inmates on as needed basis for a variety of reasons, including when inmates experience symptoms associated with low blood sugar levels.

When Hicks entered the Minnehaha County Jail in July 2010, he underwent a physical assessment and a review of his medical history. Hicks reported a history of hypertension and asthma, but he did not indicate a history of diabetes or low blood sugar levels. Hicks was put on a special diet

to manage his hypertension and weight. Hicks later removed himself from the diet and elected to consume the regular meals. In early 2011, Hicks complained of a lack of energy and dizziness, which he attributed to low blood sugar. Hicks's condition was monitored and his blood sugar levels were checked three times a week for two weeks. During that time, a medical order was written giving Hicks access to free snacks to raise his blood sugar. On January 9, 2011, at around 10:20 p.m., medical staff were called to Hicks's cell after he was found lying on the floor. Hicks's blood sugar level was checked and was normal. Earlier that evening, his blood sugar level had been checked and had tested as slightly below normal. Hicks was given a snack at the time, which raised his blood sugar levels.

    During his detention at the Minnehaha County Jail, Hicks complained several times of dizziness, which he believed was caused by low blood sugar levels. In Dr. Heisler's professional medical opinion, Hicks's symptoms were not objectively serious and were likely due to his hypertension, overexertion while exercising, or his failure to eat meals when they were served. Dr. Heisler also believed that his symptoms could have been an unavoidable side effect of his medications. After reviewing Hicks's blood sugar tests, Dr. Heisler concluded that Hicks did not require special medication, special medical treatment, additional testing, or free snacks on a regular daily basis for hypoglycemia. Therefore, on or about February 1, 2011, Dr. Heisler entered a

medical order to discontinue Hicks's free snacks because they were not medically necessary.

Hicks objected to his free snacks being discontinued. On February 15, 2011, Hicks saw Dr. Heisler for a scheduled check-up and review of his chronic health conditions. Hicks was uncooperative and refused further treatment after Dr. Heisler informed him that he did not require free snacks on a daily basis. According to Dr. Heisler, Hicks never reported an acute incident of low blood sugar levels after she entered the order to discontinue his free snacks. Hicks's blood sugar levels were tested several times after his free snacks were discontinued; his blood sugar levels were within normal parameters.

If Hicks had reported an acute incident of low blood sugar levels, he would have been given a snack, juice, or glucose tablets and his blood sugar would have been tested and further treatment would have been provided if necessary.

In July of 2011, Hicks asked to see medical staff because of low energy levels, which Hicks believed were caused by hypoglycemia. Hicks was offered a CMP, CBC, and thyroid test to determine if there was a medical reason for his symptoms, but he refused to undergo testing.[2] In August of 2011, Hicks

---

[2] A CMP test, or a comprehensive metabolic panel, is a blood test that measures glucose levels, electrolyte and fluid balance, kidney function, and liver function. *See* WebMD, Comprehensive Metabolic Panel, Topic Overview, http://www.webmd.com/a-to-z-guides/comprehensive-metabolic-panel-topic-o verview (last visited July 3, 2012). A CBC test, or complete blood count, include

saw a physician's assistant for a chronic care check-up of his hypertension. During that visit, he complained that he experienced hypoglycemia symptoms after exercising. According to Dr. Heisler, this is normal and the standard treatment approach is for the patient to take preventative and corrective measures by avoiding overexertion. On August 2, 2011, Hicks reported feeling dizzy and sweating when he got up from his bunk for recreation time. His blood sugar levels tested normal and symptoms improved after several minutes. On several occasions during his detention at the Minnehaha County Jail, Hicks was noncompliant with medical orders or exercised his right to refuse medical treatment.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if a dispute about a

---

information about the kinds and numbers of cells in the blood. *See* WebMD, Complete Blood Count (CBC), http://www.webmd.com/a-to-z-guides/complete-blood-count-cbc, (last visited July 3, 2012).

material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise show that a genuine issue exists. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

Rule 56 of the Federal Rules of Civil Procedure applies to prisoner litigants, despite the liberal construction afforded to their pro se pleadings. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522 (8th Cir. 1987). The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Courts must remain sensitive, however, to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and the Eighth Circuit has explicitly disapproved of summary dismissal of prisoner pro se claims without regard for these special problems. *Nickens v. White*, 622 F.2d 967, 971 (8th Cir.), *cert. denied*, 449 U.S. 1018 (1980). "When

dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir.1985).

## DISCUSSION

Hicks filed suit under 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth Amendment. Hicks seeks damages and prospective relief. Section 1983 provides a civil cause of action against any person who, under color of state law, causes a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009).

It is well established that deliberate indifference to a prisoner's serious medical needs is prohibited by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "A prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.'" *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003) (quoting *Estelle*, 429 U.S. at 106)."The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees." *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010).[3] But regardless of whether Hicks was a prisoner or pretrial detainee at the time relevant to this action, Hicks must demonstrate: "(1) that he

---

[3] It appears that Hicks was a pretrial detainee during his time at the Minnehaha County Jail.

7

suffered from objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). "Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002).

Hicks claims that defendants were deliberately indifferent to his serious medical needs when they denied him the diabetic snacks needed to treat his hypoglycemia. Defendants assert that Hicks was never diagnosed as hypoglycemic and argue that even if there were a genuine issue of material fact on that issue, they are entitled to summary judgment because the Minnehaha County Jail is not a sueable entity, Hicks's criminal conviction and transfer to the South Dakota State Penitentiary render his claims for injunctive relief moot, and he has failed to allege that an unconstitutional policy or custom led to the alleged deliberate indifference to his serious medical needs.

### I.     The Minnehaha County Jail is Not a Sueable Entity.

Defendants argue that the Minnehaha County Jail is not a legal entity amenable to suit under 42 U.S.C. § 1983. Hicks has not responded to this argument. Rule 17(b)(3) of the Federal Rules of Civil Procedure provides that the capacity to sue and be sued of an entity, other than a natural person or corporation, is determined "by the law of the state where the court is located." Under South Dakota law, jails are established by the board of county commissioners and are operated at county expense. *See* SDCL 24-11-2. "[C]ounty jails are not legal entities amenable to suit." *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1026 (8th Cir. 2003). *See also De La Garza v. Kandiyohi Cnty. Jail*, 18 Fed. App'x 436, 437 (8th Cir. 2001) (per curiam) (same); *Kahle v. Leonard*, 2006 WL 1519518 at *4 (D.S.D. 2006) (holding that the Pennington County Jail was not a sueable entity). Thus, defendants' motion for summary judgment is granted with respect to Hicks's claims against the Minnehaha County Jail.

### II.    Hicks's Claims for Injunctive Relief Are Moot.

In addition to money damages, Hicks has requested that several Correct Care employees be terminated. This could be construed as seeking equitable relief. At the time of the events that led to this lawsuit, Hicks was detained at the Minnehaha County Jail. He has since been transferred to the South Dakota State Penitentiary. Because Hicks is no longer subject to the same conditions of confinement, his claim for injunctive relief is moot. *See Gladson*

*v. Iowa Dept. of Corr.*, 551 F.3d 825, 835 (8th Cir. 2009) ("[B]ecause [plaintiff] is no longer incarcerated at the ISP and subject to the allegedly offending policy, his claims are moot."); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions."). Thus, defendants' motion for summary judgment is granted on Hicks's claims for injunctive relief.

### III. Hicks Has Failed to Allege a Policy or Custom of Unconstitutional Conduct.

Defendants argue that they are entitled to summary judgment because Hicks has failed to allege the existence of an unconstitutional practice, policy, or custom. Hicks does not dispute this contention, but does dispute defendants' assertion that he did not have a sufficiently serious medical condition to warrant constitutional protection.

"A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom, or action by those who represent official policy that inflicts injury actionable under § 1983." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 976 (8th Cir. 1993) (internal citations omitted). *See also Burke v. North Dakota Dep't of Corr. and Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (holding that pro se inmate who asserted that Hepatitis C treatment policy of private entity tasked with providing medical care to inmates, coupled with the actions of the medical director, violated his Eighth

10

Amendment rights); *Spencer v. Williams*, No. 8:09CV25, 2010 WL 456960 at *2 (D. Neb. Feb. 3, 2010) (dismissing pro se inmate's Eighth Amendment claim against Correct Care Solutions, which contracted with the Tecumseh State Correctional Institution, to provide medical care to inmates because he failed to allege that Correct Care's policies, practices, or customs caused his alleged constitutional injury).

First, the court must analyze whether Correct Care acted under color of state law when it provided Hicks with medical treatment. Defendants assert that Correct Care acts under color of state law in providing healthcare to inmates because it "is under contract to provide health care services for various Minnehaha County facilities, including the Minnehaha County Jail." Docket 32, Affidavit of Pam Knopf. Other than an affidavit from a Correct Care employee, defendants provide no evidence it acted under state law. But the court assumes, without deciding, that Correct Care, a private corporation, acted under color of state law because of SDCL 24-11-12.[4] SDCL 24-11-12 provides that "[t]he board of county commissioners or governing body of the municipality may appoint a physician for the jail or jails within its jurisdiction and provide for the payment of his services[.]" Thus, Minnehaha County is

---

[4] The Eighth Circuit Court of Appeals adopted a similar approach to evaluating whether a private corporation acts under state law in *Saunders.*, 984 F.2d at 973. A customer sued a department store security guard after being detained for shoplifting. *Id.* The court assumed, without deciding, that the department store acted under color of state law. *Id.* at 975. In reaching that conclusion, the Court relied on a North Dakota statute permitting a private "peace officer or merchant" to detain suspected shoplifters. *Id.* at n.5.

authorized to contract for the provision of medical services and the court assumes, without deciding that Correct Care acted under state law when it provided Hicks with medical care during his detention at the Minnehaha County Jail.

In order to proceed to trial on his claims, Hicks must show that Correct Care had an unconstitutional policy or custom that led to a violation of his rights under the Eighth Amendment. "To establish the existence of a policy, [Hicks] must point to 'a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.' " *Jenkins v. Cnty. of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009) (quoting *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir.1999)). Hicks must also show that the policy was unconstitutional and that it was "the moving force" behind the harm that he allegedly suffered. *Id.* "Alternatively, liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a 'custom or usage' with the force of law." *Crawford v. Van Buren Cnty, Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (internal quotations omitted). But liability for an unconstitutional custom cannot arise from a single act. *Id.*

Hicks does not allege a policy or custom of unconstitutional action on the part of defendants regarding the medical treatment of inmates with low blood sugar levels. The record demonstrates that defendants denied Hicks

free snacks on a regular daily basis because he had no objective medical need. The policy or custom that was followed meant that Hicks would have been provided a free snack if, or when, he complained of low blood sugar levels and it was determined that he needed a snack. Hicks has not alleged, and there is no evidence to show, that he was unable to purchase his own snacks from the commissary or that he was ever denied a snack when he was in need. Thus, Hicks has failed to allege that an unconstitutional policy or custom led to a violation of his rights. As a result, his claims against Correct Care fail. Thus, the court need not address whether defendants were deliberately indifferent to his medical needs. Therefore, it is

ORDERED that defendants' motion for summary judgment (Docket 28) is granted.

IT IS FURTHER ORDERED that Hicks's motion to compel (Docket 44) is denied as moot.

Dated July 5, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE